Rosemarie DENICOLA et al., Plaintiffs,

v.

G. C. MURPHY COMPANY, Defendant, Appellee-Cross Appellant,

and

General Teamsters, Chauffeurs and Helpers, Local Union # 249, Defendant, Appellant-Cross Appellee.

Nos. 76–1866, 76–2116.

United States Court of Appeals, Third Circuit.

Submitted Feb. 23, 1977.

Decided Aug. 8, 1977.

As Amended Nov. 9, 1977.

Robert H. Stevenson, Anderson, More-
land & Bush, Pittsburgh, Pa., for G. C.
Murphy Co.

Thomas W. Brown, David S. Pollock, Jubelirer, McKay, Pass & Intrieri, Pittsburgh, Pa., for General Teamsters, Chauffeurs and Helpers, Local Union No. 249

Before ADAMS, BIGGS and HUNTER, Circuit Judges.

## OPINION OF THE COURT

BIGGS, Circuit Judge.

### I. FACTS

The case at bar began as a class action brought by 29 named plaintiffs against their employer, the G. C. Murphy Company (Murphy) and their local union, General Teamsters, Chauffeurs and Helpers, Local Union No. 249 (Local 249). The complaint, brought on behalf on all female employees of Murphy's McKeesport, Pennsylvania, warehouse who were members of Local 249, alleged that Murphy and Local 249 violated Title VII of Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e et seq., by maintaining under a 1968 collective bargaining agreement separate job classifications, pay scales, and seniority system for male and female employees.

A long exposition of the facts surrounding the instant case is unnecessary since they have been fully discussed in Glus v. G. C. Murphy Co., 562 F.2d 891, (3d Cir. 1977).

Local 249 was the successor collective bargaining agent to the Retail, Wholesale and Department Store Union, Local No. 940 (Local 940), a defendant in the Glus case. It became the collective bargaining agent for Murphy's warehouse employees on January 30, 1971. The 1968 collective bargaining agreement entered into by Local 940 and the International Union of Wholesale and Department Store Union, AFL–CIO

(the International)[1] with Murphy expired on January 31, 1971. Between February 1, 1971 and June 3, 1971 the parties engaged in contract negotiations. During the course of the negotiations it was agreed that any increases in the hourly rate of pay would be retroactive to February 1, 1971.

The key facts of the contract negotiations are disputed by the parties. Murphy claims that during a negotiating session on June 3, 1971 it offered to retroactively eliminate the wage differential.[2] According to Murphy's witnesses the proposal was rejected by Local 249's representatives as being too complicated. Local 249 contends that no such offer was made by Murphy. The district court found an offer to eliminate retroactively the discrimination was made by Murphy to Local 249 and Local 249 rejected the offer because it was too complicated. 158a.

A contract was agreed upon between Local 249 and Murphy on June 11, 1971. The contract retroactively eliminated all discriminatory practices as of February 1, 1971, with the exception of the wage differentials. The wage differentials were eliminated on June 21, 1971.

Plaintiffs filed charges with the Equal Employment Opportunity Commission based upon the claim which eventually led to the suit from which this appeal has been taken.

Murphy, pursuant to Fed.R.Civ.P. 13(g) brought a cross-claim against Local 249. As explained in Glus, supra, Murphy reached a settlement agreement with plaintiffs. The settlement agreement provided that Murphy would pay the plaintiffs $548,000, of which $448,000 was apportioned to plaintiffs' Title VII complaint and $100,000 was apportioned for violations of the Equal Pay Act of 1963 (Equal Pay Act), 29 U.S.C.

---

1. The International was also a defendant in the Glus case and is the appellant-cross-appellee in Glus v. G. C. Murphy, Co., referred to supra.

2. Murphy's witnesses testified that the proposal to retroactively eliminate as of February 1, 1971 the wage differential was to be according to the following formula: 1) females would be first slotted into the male seniority list; 2) on

the basis of the new, single seniority system each female would be placed in the appropriate position under a revised non-discriminatory job classification; 3) the females would receive the difference between their actual pay from February 1, 1971 to June 30, 1971 and the amount which they would have received had the new system been put into effect.

§§ 201 *et seq.*[3] In addition, Murphy agreed to pay plaintiffs' counsel's fees of $100,000.

A hearing was held on October 2, 1972 concerning the proposed settlement. Present at the hearing, in addition to plaintiffs' and Murphy's counsel, was Frank P. G. Intrieri, Esquire, counsel representing Local 249. The district court inquired whether there were any objections to the settlement. Mr. Intrieri did not object.

Trial was held on the remaining issue, Murphy's claim for contribution against Local 249.

The trial court found Murphy and Local 249 were equally liable for the discrimination against the plaintiffs that occurred between February 1, 1971 and June 30, 1971. The court held Local 249 to be liable for $18,393. This represented 50 per cent of $^{5}/_{72}$'s of the plaintiffs' Title VII recovery and a similar proportion of the attorney's fees deemed to be for the Title VII portion of the recovery.[4] The court, however, held that as a labor organization, Local 249 could not be liable for contribution under the Equal Pay Act. Local 249 appeals from the judgment of the district court. Murphy cross-appeals on the denial of contribution for violation of the Equal Pay Act.

## II. LAW

### A. *Local 249's Appeal*

In its appeal Local 249 raises three contentions: 1) The district court erred in ruling that Local 249's actions violated Title VII, 2) the district court erred in finding that Murphy offered to retroactively remove the discriminatory provisions of the collective bargaining agreement and 3) the district court abused its discretion in granting remedial relief in the form of monetary damages against Local 249. We are unable to agree with Local 249.

■ Local 249's argument that its actions were not violative of Title VII is without merit. Local 249's argument is that it should not be responsible for the 1968 collective bargaining agreement and that it met its statutory obligations by negotiating, what it terms, "[a] totally nondiscriminatory collective bargaining agreement."[5] However, Local 249 overlooks the fact that the district court did not base its liability upon its refusal of Murphy's offer to eliminate retroactively the discriminatory features of the 1971 contract.[6] There can be no doubt that Local 249's refusal violated Title VII.

■ Local 249's contention that the district court erred in finding that Murphy offered to retroactively eliminate the discriminatory provisions of the 1971 contract cannot be sustained. The Court of Appeals cannot sit as a finder of fact or review *de novo* the facts finding of the district court. Our review of the record indicates that the district court's finding that Murphy made an offer to retroactively eliminate the discriminatory pay differentials was not clearly erroneous.

■ Local 249's last point, that the district court abused its discretion in awarding relief in the form of monetary damages against Local 249, is wholly without merit.

### B. *Murphy's Cross-Appeal*

■ Murphy has made numerous contentions regarding the district court's refusal to find Local 249 liable for contribution for violation of the Equal Pay Act, 29 U.S.C. § 206(d). Murphy first argues that the district court erred in ruling that a labor organization is not liable to employees for discrimination under 29 U.S.C. § 206, and therefore is not liable for contribution to an

---

3. Under the settlement agreement plaintiffs amended the complaint to include a claim only against Murphy for violation of the Equal Pay Act. 68a.

4. *See Glus v. G. C. Murphy Co., supra,* for a full explanation of how the district court proportioned the contribution.

5. Brief for Appellant, Local 249, No. 76–2116, at 7.

6. District Court opinion, at 160a.

employer found liable under the Act.[7] *See* 161a–164a. We are unable to accept Murphy's contention.

The Equal Pay Act provides for both injunctive relief and damages for, *inter alia*, sex discrimination. 29 U.S.C. § 216(b), which gives affected employees a cause of action for violation of the Equal Pay Act, provides in part:

> "*Any employer* who violates section 206 or section 207 of this title shall be liable to the employee or employees affected . . . ." (Emphasis added).

Section 216(b) should be contrasted with § 216(a) which deals with criminal sanctions for violation of the Act which provides in relevant part:

> "*Any person* who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000 or to imprisonment for not more than six months, or both. . . . " (Emphasis added).

█ As this Court observed in *Bowe v. Judson C. Burns, Inc.*, 137 F.2d 37, 39 (3d Cir. 1943), "The congressional intent is very plain and the pattern of the statute is perfect." An employee may bring an action for back pay under the Equal Pay Act only against his or her employer. Therefore, we must reject Murphy's first theory of liability based upon its contention that the International could be liable for back pay. *See Brennan v. Emerald Renovators, Inc.*, 410 F.Supp. 1057 (S.D.N.Y.1975); *Cook v. Mountain States Tel. & Tel. Co.*, 397 F.Supp. 1217, 1226 (D.Ariz.1975); *Hunter v. United Air Lines, Inc.*, 10 E.P.D. ¶ 10,457, at 5975 (N.D.Cal.1975); *Tuma v. American Can Co.*, 367 F.Supp. 1178 (D.N.J.1973).

We note that a few decisions have indicated that an employer may maintain an action under the Equal Pay Act against a labor organization for contribution. *Compare Wirtz v. Hayes Industries, Inc.*, 1 E.P.D. ¶ 9874, at 1089 (N.D.Ohio 1968), *with Hodgson v. Sagner, Inc.*, 326 F.Supp. 371 (D.Md.1971), *aff'd sub nom., Hodgson v.*

*Baltimore Regional Joint Board, Amalgamated Clothing Workers*, 462 F.2d 180 (4th Cir. 1972) (Per Curiam).

In *Hayes Industries* the district court, in dismissing under F.R.Civ.P. 56 a defendant-employer's third party complaint against a union, noted that "a reading of the statute [the Equal Pay Act] does not disclose a purpose to make the union jointly liable in damages," and "the only power given the District Courts against unions by this Act would be an injunction under section 217 to restrain the conduct prohibited in section 206(d)(2)." Nevertheless, the court expressed the opinion that its observations did

> "not mean, however, a suit could never lie in a third-party complaint against a union for contribution in a case arising under this Act, for a third-party plaintiff may state a claim grounded upon common law theories of recovery, or upon the evolving body of Federal labor law being fashioned by the Federal courts . . . ."

In *Hodgson v. Sagner, Inc. supra*, the Secretary of Labor sought an injunction against a clothing manufacturer and the union that represented the manufacturer's employees. The Secretary sought to enjoin the defendants from violating the Equal Pay Act and restrain the withholding of certain unpaid back wages. The Secretary contended that the employer paid female employees less than their male counterparts and sought to recover the amount of the underpayment from the employer. The Government originally sought only injunctive relief against the defendant-union but later moved to amend its complaint to include a claim for damages against the union. The court rejected the union's contention that it could not be compelled to pay back wages and held the union and employer jointly liable.

> "[T]his Court cannot agree with the Union's position . . . . If that position were correct, a union which caused an employer to illegally withhold wages from its employees would be subject to no more than future restraint. Its past violation of the law would go uncorrected

---

**7.** Local 249 has not submitted a brief to this Court on Murphy's cross-appeal.

and unpunished; it could merely be prevented from breaking the law in the future. There is no apparent reason why a union which violates Section 206(d) should be treated any differently from an employer violator. Equitably, both should be subject to the same type of decree, which in order to give full relief would necessarily include a provision requiring the payment of wages illegally withheld or caused to be withheld as well as one prohibiting any future violation of the law.

"Whether or not there is an express statutory basis for ordering of this type of relief against the Union, this Court is satisfied that within its general equitable powers, it may, if it finds a violation of Section 206(d)(2), order an offending union to repay the Government for distribution to the employees involved the wages that the Union caused to be wrongfully withheld. In support of this proposition, I would cite the case of *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 80 S.Ct. 332, 4 L.Ed.2d 323 (1960) . . .'"

*Hodgson v. Sagner, Inc., supra*, at 373.

■ We find *Hayes* and *Sagner* to be unpersuasive. As noted *supra*, the Equal Pay Act specifically provides for a cause of action against an employer for back wages. The Act evidences absolutely no Congressional intent to make a union liable either to an employee or to an employer. We recognize the fact that an act need not specifically provide for a cause of action in order for it to provide the basis for recovery. *See e. g., Cort v. Ash*, 422 U.S. 66, 75, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975). However, we find none of the relevant criteria suggested in *Cort* present which would allow a cause to be implied under the Equal Pay Act against a union. *See id.* 77–85, 95 S.Ct. 2080.

G. C. Murphy maintains that even if this Court fails to accept its argument that a labor union could be directly liable to the employees under the Equal Pay Act it may, nevertheless, be liable to the employer under two separate theories.

First, Murphy argues that when plaintiffs bring an action based upon both the Equal Pay Act and Title VII, there should be no "formalistic allocation of damages," since a violation of the Equal Pay Act is also a violation of Title VII, the latter section on liability being applicable to both employers and labor organizations. In other words, Murphy contends that it makes no sense to allocate damages between the Acts since the plaintiffs could have brought suit only under Title VII, and achieved the same recovery for which the International would be liable for contribution.

Murphy's argument is difficult to fathom since it and the plaintiffs agreed to the allocation of $100,000 of $548,000 settlement to satisfy the plaintiffs' claim under the Equal Pay Act. In a "Memorandum of Understanding" between Murphy and plaintiffs, dated July 12, 1972 and filed on July 14, 1972,[8] paragraph 5 provides:

"5. The plaintiffs shall amend their complaints to include a count under the Fair Labor Standards Act [Equal Pay Act], 29 U.S.C. 216b against G. C. Murphy Company only. $100,000 of the $548,000 being paid by the G. C. Murphy Company to the eligible class shall be deemed to satisfy any obligation which G. C. Murphy may have under the Fair Labor Standards Act to the class of plaintiffs, pursuant to 29 U.S.C. 206d."

68a.

■ The allocation of damages which Murphy condemns here was made not by the district court but by Murphy. For the purpose of Murphy's argument this court will not look beyond the "Memorandum of Understanding" to divine the parties' moti-

8. This document, which appears in the Joint Appendix at 67a–69a, was not filed with the district court. Pursuant to Federal Rule of Appellate Procedure 10(e) this Court ordered the document to be filed with the district court and a supplemental record containing this doc-

ument certified by the clerk of the district court and transmitted to the clerk of this Court. Since this important document is in the *Joint Appendix*, we can and do assume that the parties can have no objection to our treating it as having been filed on July 14, 1972.

vation for such an allocation. It is sufficient to say that since Murphy chose, for whatever reason, to divide the settlement along the lines stated above it must proceed in its action for contribution along those same lines.

Lastly, Murphy contends that it is entitled under Pennsylvania law[9] to contribution from Local 249 as "a party commonly responsible for a wrong committed."

 In the context of suits arising under the Federal Tort Claims Act, 28 U.S.C. § 2674, and the Federal Employers' Liability Act, 45 U.S.C. §§ 51, *et seq.*, state law has been applied for the purposes of contribution. *See, e. g., Kennedy v. Pennsylvania R.R. Co.,* 282 F.2d 705 (3d Cir. 1960); *Howey v. Yellow Cab Co.,* 181 F.2d 967 (3d Cir. 1950), *aff'd sub nom., United States v. Yellow Cab Co.,* 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523 (1951).

The situation presented in the instant case is distinguishable from the Federal Tort Claims Act and the Federal Employers' cases. In the latter cases contribution is based upon duties and liabilities having their origin in state law. In *Richards v. United States,* 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962), the Supreme Court stated:

> "[T]he [Federal Tort Claims Act] was not patterned to operate with complete independence from the principles of law developed in the common law and refined by statute and judicial decision in the various States. Rather, it was designed to build upon legal relationships formulated and characterized by the States, and, to that extent, the statutory scheme is exemplary of the general interstitial character of federal law. . . ."

*Id.* at 6–7, 82 S.Ct. at 589. Similarly, although the Federal Employers' Liability Act may be properly viewed as in derogation of common law duties and liabilities between employers and employees duties owed to plaintiffs by third persons are still regulated by the substantive law of the state. *See Chicago and North Western Railway Co. v. Minnesota Transfer Railway Co.,* 371 F.2d 129 (8th Cir. 1967).

In the instant case a Federal statute, and not a state law, governs the conduct of the Local 249 to the employees. *See* 29 U.S.C. § 206(d). As we have stated, we do not believe the Act imposes liability for back pay upon labor organizations for breaching the duty owed in 29 U.S.C. § 206(d). Since the statute has left no interstices with regard to the rights and liabilities of the various parties we can perceive no reason for application of Pennsylvania's law of contribution.

Other points raised by the parties do not require discussion.

### III. CONCLUSION

The judgment of the district court will be affirmed.

Each party shall bear its own costs.

---

**9.** Uniform Contribution Among Tortfeasors Act, 12 P.S. §§ 2082, *et seq.*